## JOHNSON v. STATE.

### Opinion delivered December 15, 1894.

1. *Improper evidence—Effect of withdrawal.*
   The admission of improper evidence is cured where the court withdraws it from the jury before the case is submitted to them.

2. *Instruction—Province of jury.*
   It is not error for the court to say to the jury : "This cause has been a great expense to the county, and ought to be decided ; and while I do not ask you to yield any question of conscience, you must not be obstinate or too tenacious of your views."

Appeal from Faulkner Circuit Court.

JAMES S. THOMAS, Judge.

*J. H. Harrod*, for appellant.

1. The court erred in asking the defendant, on cross-examination, if he did not forfeit his bail on a charge of felony when he left Texas. Mansf. Dig. sec. 2902 ; 34 Ark. 257 ; 51 *id.* 140. This error was not cured. The incompetent evidence should have been ex-

pressly withdrawn from the jury. 102 U. S. 457; 43 Ark. 99.

2. The remarks of the judge were prejudicial error. 17 Kas. 462; 38 Mich. 416; 46 Mich. 623; 29 N. E. 909; 42 Ind. 420; 14 S. W. 538.

3. It was reversible error to keep the jury together for ninety-four hours while some of them were sick, and under the influence of narcotics.

*James P. Clarke*, Attorney General, and *Chas. T. Coleman* for appellee.

1. If the question asked defendant was error (46 Ark. 141; 56 *id.* 7; 58 *id.* 480), it was cured by the court's withdrawing it and the answer from the jury.

2. The remarks of the judge to the jury were not prejudicial. No valid objection can be made to them. Thompson, Charging the Jury, sec. 58; 35 Mich. 56; 8 Cush. 1; 50 Ga. 53; 60 N. H. 472.

BATTLE, J. J. S. Johnson was indicted for murder in the first degree; was convicted of murder in the second degree; his conviction was set aside; he was tried the second time, and convicted of manslaughter.

He complains of three alleged errors in the second trial. First. While he was testifying in his own behalf, the prosecuting attorney asked him, on cross-examination, if he did not forfeit a bail bond which he had given to answer a charge of felony when he left Texas "a year or so" before the killing of the deceased. He objected to the question, but the court overruled his objection, and, saving exception, he answered that he had. After the prosecuting attorney had spoken about ten minutes in his first speech to the jury, the judge interrupted him, and said that the court would sustain the objection to the question as to his leaving Texas, and hold the answer thereto improper evidence to be introduced.

Second.   On the 6th of July, 1894, the cause was submitted to the jury.   At 5 o'clock in the evening of the next day the court sent for the jury, and inquired if they had agreed, and they answered they had not.   On the 10th of July, 1894, about 8:30 in the morning, the court again sent for them, and asked if they had agreed, and they replied that they had not, and the court said: "This case has been a great expense to the county from which it came, and it ought to be decided; and while I do not ask you to yield any question of conscience, you must not be obstinate or too tenacious of your views"— to which statement the defendant at the time excepted. At 4 o'clock in the evening of the same day they returned a verdict in words as follows: "We, the jury, find the defendant guilty of voluntary manslaughter, and leave the assessing of the punishment to the court, and recommend the defendant to the mercy of the court."

Third.   One of the grounds of the defendant's motion for a new trial was: "The court erred in keeping the jury together in said cause ninety-four hours while some of them were ill, and wholly incapacitated by reason of sickness from considering said cause"—to support which he filed the affidavit of D. J. Cox, in which the affiant stated, substantially, as follows: McPherson, a member of the jury, became sick during the night of the 8th of July, 1894, and appeared to suffer considerably.   On the day following he took medicine and was drowsy, and after this, on the same day, sent for a physician, who came at once, and administered to him a hypodermic injection of one-eighth of a grain of morphine, and left two more doses of one-eighth of a grain each which the patient took.   He complained of being sick till the jury was discharged.   Taylor, Jolly and Blackburn, three other members, complained of being sick on Monday.

1. Admission
of improper
evidence cured
by withdraw-
ing it.

1. The question propounded to the defendant while testifying was an improper one (*Anderson* v. *State*, 34 Ark. 257) ; but the error in admitting the answer to it as evidence could have been cured by the court withdrawing the same from the consideration of the jury (*Pennsylvania Co.* v. *Roy*, 102 U. S. 451, 458; *Carr* v. *State*, 43 Ark. 99). The defendant insists that this should have been done by telling the jury in direct terms not to consider it in arriving at their conclusion. This, it seems to us, is unnecessary. It is properly withdrawn if it is done in a manner sufficient to indicate clearly and give the jury to understand that the evidence is excluded, and they should not consider it. What more can be accomplished by telling them in clear and explicit language not to consider it ?

In this case the defendant objected to the question. Why ? Because it was not proper, and the witness should not be required to answer it. After overruling the objection, and when the prosecuting attorney was in the midst of his speech, the court stopped him to say that the defendant's objection was sustained, and that the answer to the question was not admissible as evidence. What was intended by this remark, and how did the jury understand it ? What the court meant is obvious. It intended that the jury should not consider the answer. Certainly, the jury, if they understood that it was inadmissible as evidence, could not believe or think that they had a right to consider it as such. As intelligent men, they could not reasonably come to such a conclusion. The time and manner in which the court announced its ruling were calculated to impress on their minds the importance of disregarding it as evidence. The defendant doubtless thought so, or he would have asked the court to instruct them to disregard it in more explicit language.

2. Did the court err in saying to the jury: "This cause has been a great expense to the county from which it came, and it ought to be decided; and while I do not ask you to yield any question of conscience, you must not be obstinate or too tenacious of your views?" Judges should carefully refrain from conveying to a jury, by language, manner, or emphasis, an opinion as to disputed facts, or the innocence or guilt of the accused. They should use no means calculated to compel or induce jurors to yield assent to verdicts against their honest convictions. In the language objected to, no opinion as to the facts in the case is indicated, nor was the jury advised to yield their honest convictions for the purpose of arriving at a verdict. The court sought to impress them with the importance of a decision, and, while it did not ask them " to yield up any question of conscience," advised them to not be obstinate or too tenacious of their opinions. What, from this, were they reasonably to understand? Manifestly, that they should not be stubborn or unreasonable in adherence to their opinions. And this is the duty of jurors. " The jury room is surely no place for pride of opinion, or for espousing or maintaining, in the spirit of controversy, either side of a cause. The single object to be there affected is to arrive at a true verdict ;" and this can only be done by deliberation, and by due deference to, and careful consideration of, the argument and opinions of each other. As said by the Supreme Court of Connecticut: "Although the verdict to which each juror agrees must, of course, be his own conclusion, and not a mere acquiescence in the conclusions of his fellows, yet, in order to bring twelve minds to a unanimous result, the jurors should examine with candor the questions submitted to them, and with due regard and deference to each other. In conferring together," they "ought to pay proper respect to each

*2. Instruction held not to invade jury's province.*

other's opinions, and listen with candor to each other's arguments." *State* v. *Smith*, 49 Conn. 386.

3. To satisfactorily dispose of the third contention—that the court erred in not discharging the jury on account of the sickess of one of their number—it is enough to say, the language of the record in the case is as follows: "At 8:30 o'clock Monday morning, when court opened, the jury were called in, and the court stated to them that they would be discharged if the juror McPherson was not in a condition to remain longer on the jury. The juror stated that he was about well, and that it would not inconvenience him to remain on the jury. Wherefore they were told to retire to consider of their verdict, and the court did not hear any further complaint about the sickness of any person. The verdict was not returned until some thirty-six hours after this time."

Judgment affirmed.