SUSLAK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2315.

1. PROSTITUTION. (§ 4*)—WHITE SLAVE ACT—EVIDENCE.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), evidence *held* to sustain a conviction.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4; Dec. Dig. § 4.*]

2. PROSTITUTION (§ 4*)—EVIDENCE—INTENT.

In a prosecution for violation of the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p 1343]) in January, 1912, evidence that in 1910, when prosecutrix's husband was absent, defendant invited her to come to B., and, while lewdly consorting there with her, made her a proposition to set her up in the "sporting" business, and tried to show her how to conduct it successfully, the relations between defendant and the prosecutrix never having thereafter been entirely broken off, was admissible to prove defendant's intent in inducing prosecutrix to come to B. in 1912.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §˙4; Dec. Dig. § 4.*]

3. PROSTITUTION (§ 4*)—EVIDENCE—INTENT.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]) in February, 1912, evidence that in August, 1911, defendant told witness that he [defendant] "wouldn't mind getting" prosecutrix to B. so he could make a fortune out of her was admissible to show defendant's intent in procuring prosecutrix to come to B. in 1912.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4; Dec. Dig. § 4.*]

4. PROSTITUTION (§ 4*)—WHITE SLAVE ACT—VIOLATION—EVIDENCE.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), evidence of prosecutrix that she entered open prostitution soon after she came to B., because the rooming house to which defendant took her was a rendezvous for harlots, and that, having thus gotten the reputation of a prostitute, she thought she might as well live the life and make the money, and that defendant told her how attractive the "sporting" life was, "how nice the girls dressed," etc., was admissible as bearing on the purpose for which defendant brought prosecutrix to B.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4; Dec. Dig. § 4.*]

5. PROSTITUTION (§ 4*)—WHITE SLAVE ACT—VIOLATION—EVIDENCE.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), evidence concerning the character of defendant's wife, and his attitude toward her and the life she lived, was admissible in connection with other evidence that defendant told prosecutrix that his wife was about to return in August, and that they would take prosecutrix with them to engage in immoral business.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 4; Dec. Dig. § 4.*]

6. PROSTITUTION (§ 5*)—WHITE SLAVE ACT—"DEBAUCHERY."

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), an instruction that the act of debauchery denounced in the statute means that the wo-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

213 F.—58

man is to be subjected repeatedly to unlawful sexual intercourse or fornication or adultery was not objectionable on the ground that debauchery imports seduction from a condition of purity, and that 'there can be no such debauchery in the case of an unchaste woman; the words being otherwise defined as "excessive indulgence in sexual pleasures of any kind," sexual immorality, unlawful indulgence of lust, etc.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 5; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 2, pp. 1863, 1864.]

7. PROSTITUTION (§ 1*)—WHITE SLAVE ACT—ELEMENTS OF OFFENSE—PREVIOUS PURITY OF FEMALE.

A violation of the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]) is committed by the transportation of a female for the purpose of sexual immorality, without reference to her previous character.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. § 1.*]

8. PROSTITUTION (§ 5*)—TRIAL—INSTRUCTIONS.

Where, in a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), it appeared that defendant was in almost daily correspondence with prosecutrix, and only a short time prior had written her to come to him, and offered to send money for that purpose, that she had accepted the offer, telegraphed for the money, and that, after he had arranged for the ticket, he changed his mind and had the ticket furnished her.through another, the court properly charged that when a person arranges to have a crime committed, and sets in motion agencies for its commission, and thereafter repents, but does not prevent the crime, he is as responsible as if he had not repented.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. § 5; Dec. Dig. § 5.*]

9. CRIMINAL LAW (§ 865*)—TRIAL—COERCION OF JURORS—INSTRUCTIONS.

In a prosecution for violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), it was not an improper exercise of the trial court's discretion, after the jury had been out a considerable time, to instruct them that the case was important and costly both to the government and to the defendants, that the jury must remember that the witnesses were likely to disappear and could not be had at another trial, and that they should attempt to agree on honest convictions; and, though they had the power under the law to stand out for acquittal or conviction, no juror should do so arbitrarily, but should listen to the arguments of the other jurors, and come to an understanding if he could, and be convinced by their argument that it was wrong to convict as well as to acquit a man on an arbitrary stand taken by a juror, and that they must not consider the penalty in the case whatever.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2069; Dec. Dig. § 865.*]

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Sigmund Suslak was convicted of violating the Mann White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), and he brings error. Affirmed.

Odell W. McConnell, of Helena, Mont., for plaintiff in error.

Burton K. Wheeler, U. S. Atty., of Butte, Mont., and S. C. Ford, Asst. U. S. Atty., of Helena, Mont.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. Suslak, the plaintiff in error, hereinafter called defendant, was convicted of violating the White Slave Act (Act June 25, 1910, c. 395, 36 Stat. 825 [U. S. Comp. St. Supp. 1911, p. 1343]), and was sentenced to two years' imprisonment and to pay a fine and costs. The indictment contains 12 counts, all relating to the going of a woman named Grace Beal from Spokane, Wash., to Butte, Mont., on the 5th day of January, 1912. In the first count the charge is that defendant and one Max Fried, jointly indicted with him, caused the woman to be transported for the purpose of prostitution. In the second count unlawful cohabitation is designated as the purpose; in the third count, debauchery; in the fourth, an intent to induce her to become a prostitute; and, in the fifth, an intent to induce her to give herself up to debauchery. In the sixth, seventh, and eighth counts the charge is that the defendant procured for her her railroad ticket; the intent or purpose alleged being either prostitution (sixth count), or debauchery (seventh count), or to induce her to give herself up to debauchery (eighth count). In counts 9 and 10 the charge is of persuading and inducing her to come to Butte for the purpose of prostitution (ninth count), or for debauchery (tenth count); and such in substance are also the eleventh and twelfth counts.

That the woman went from Spokane to Butte at the time alleged and upon the same train with Fried is conceded. So also it is not questioned that prior to that time the defendant had maintained illicit relations with her, and that immediately upon her arrival at Butte he took her from the depot to a room which he had secured for that purpose, and there renewed the illicit relations, and that a few days later she unreservedly gave herself up to prostitution.

[1] It is first assigned as error that the evidence is insufficient to support the verdict. The point was not raised at the trial by motion or request for an instruction to the jury, and upon that ground alone perhaps we should hold that it is not now reviewable. But, upon a careful reading of the entire record, we have no hesitation in concluding that upon the merits the point is not well taken. While in a measure it is circumstantial, the evidence is abundant. Fried's story is inherently so improbable and is so conflicting in material respects with the testimony, not only of the prosecutrix, but of several other witnesses, that it can be given little weight. The jury were not only at liberty to believe, but could hardly escape the conviction, that he had intimate relations with the woman at Spokane, and upon the trip to Butte, and afterwards, and that he encouraged her to come, and purchased her ticket for that purpose. Such being the case, it was entirely reasonable for the jury to find from the other facts and circumstances that there was an understanding between the defendant and Fried, before the latter left Butte, that he (Fried) should bring the woman back with him, and that he was to use such means as might be found to be appropriate for that purpose. Before Fried left for Spokane, the defendant rented a room in a lodging house for the use of the woman, and when she arrived he was at the depot, where he at once took

charge of her and placed her in this room and, as already stated, resumed immoral relations with her. Whatever may have been the character of this rooming house, within a short time she went to the Boston Block, a house of ill repute, where she took a room for which the defendant paid the rent. His "wife" was a harlot, and, upon the whole, it is difficult to escape the conclusion that he desired Grace Beal to come to Butte, possibly for the immediate gratification of his own lust, but for the ultimate purpose of profiting from her life of shame.

The other general question is: Did the defendant have a fair trial? Under this head it is urged, first, that the court admitted certain immaterial testimony. Nine different questions are specified which, over the defendant's objection, the court permitted to be answered. In considering these assignments, it must be borne in mind that the defendant's purpose or intent was an essential ingredient of the several charges laid in the indictment, and in proving intent the evidence may often properly take a wide range; and, especially in cases where, as here, the defendant's conduct is in some respects equivocal, the trial court is vested with a liberal discretion.

[2] In answer to one of the questions objected to, the prosecutrix stated that in the year 1910, at a time when her husband was absent, the defendant invited her to come to Butte, and while lewdly consorting with her there he made her a proposition of setting her up in the "sporting" business, and tried to induce her to learn how to conduct it successfully. Though somewhat remote, the circumstance is not left entirely isolated, and we do not think the admission of the testimony amounts to an abuse of discretion. The relations of the defendant with the prosecutrix were never entirely broken off, and this circumstance throws some light upon his attitude toward her.

[3] Of the same character is the testimony of the witness Lipson, to the effect that in August, 1911, the defendant told him that he (the defendant) "wouldn't mind getting Grace Beal to Butte, so he could make a fortune out of her."

[4] To another question objected to, the prosecutrix answered that she entered upon a life of open prostitution soon after she came to Butte because the rooming house to which the defendant took her turned out to be a rendezvous for harlots, and that, having thus gotten the reputation of a prostitute, she thought she might as well live the life and make more money.

And, in response to still another question, she stated that the defendant used to tell her how attractive the sporting life was, and "how nice the girls dressed," etc. The evidence was clearly material. If, upon her arrival in Butte, defendant took her to a house of ill repute, had illicit relations with her, and from time to time sought to make the sporting life appear attractive, it would be a fair inference that, if he had anything to do with her coming to Butte, it was for one of the purposes charged in the indictment.

[5] The other questions relate to the character of the defendant's wife, and his attitude toward her and the life she lived. These facts cannot be said to be wholly irrelevant to the question of the defendant's intent and purpose. But clearly in view of the testimony of the prosecutrix that the defendant told her that his wife was coming back

in August, and that he (the defendant) and his wife would take her with them to engage in immoral business, the questions were proper.

The other exceptions relate to instructions given and refused:

1. The court denied certain requested definitions of the terms prostitution, debauchery, and cohabitation, and upon that head instructed the jury as follows:

"Prostitution, within the meaning of the law and the charge before you now, means that the woman is to offer her body to indiscriminate sexual intercourse with men, either for hire or without hire." "The act of debauchery denounced in the statute * * * means that the woman is to be subjected repeatedly to unlawful sexual intercourse or fornication or adultery." "Unlawful cohabitation, as defined in this statute, is the dwelling and living together, as though married, and with the appearance of being married, and having or intending to have sexual intercourse more or less continuously. It does not mean, by unlawful cohabitation, that the parties should pass themselves off as husband and wife, but simply that they lived together or intended to live together more or less continuously, and indulge in sexual intercourse as desire and opportunity may arise. It might be unlawful cohabitation if a man had another room, if he intended to repeatedly visit at the woman's room and have sexual intercourse with her as desired."

[6] No serious complaint is made touching what was said about prostitution, but the definitions of debauchery and unlawful cohabitation are vigorously assailed. It is urged that debauchment imports seduction from a condition of perfect purity, and that there can be no debauchery in the case of an unchaste woman. We think this view is entirely too narrow. Surely a woman who has committed a single act of unchastity is debauched if thereafter she is seduced or inveigled into the life of a common prostitute. Moreover, the denunciation of the law is not against transportation for the purpose of debauchment, but for the purposes of debauchery. In the Century Dictionary debauchery is defined as:

"Excessive indulgence in sensual pleasures of any kind; gluttony; intemperance; sexual immorality; unlawful indulgence of lust."

So Webster, while giving, as one of the meanings, seduction from virtue, duty, or allegiance, also defines the term as:

"Excessive indulgence of the appetites, especially excessive indulgence of lust; intemperance; sensuality; habitual lewdness."

It was in this sense of unlawful indulgence of lust in which the term was intended to be used in the act.

[7] Whether the woman be pure or impure, if her transportation be for the purpose of sexual immorality, the statute is violated. Such a meaning, it is thought, both the spirit and the purpose of the statute imply, and in that view the instruction complained of was, to say the least, quite as favorable to the defendant as he had the right to expect. Athanasaw v. United States, 227 U. S. 326, 33 Sup. Ct. 285, 57 L. Ed. 699.

On the other hand, we think that the trial court gave to "unlawful cohabitation" too wide a meaning. It is to be noted that this phrase is not used in the White Slave Act at all. The act denounces transportation for the purpose of prostitution or debauchery, "or for any other immoral purpose"; and the one count in the indictment upon which

this question arises charges transportation "for an immoral purpose, to wit, for the purpose of unlawful cohabitation." It is a question, therefore, not of the construction of the language of the act, but of the proper interpretation or.construction of the indictment. The pleader might have selected any appropriate language to describe the species of immorality intended to be charged, and, having chosen a legal phrase for the purpose, it is to be presumed that it was employed in its legal sense. In that view, the first part of the instruction is free from serious objection, but it is inaccurate to say that it would be unlawful cohabitation if a man and a woman, being unmarried, simply "intended to live together" as man and wife, or if the man, having another room, intended repeatedly to visit at the woman's room for the purpose of sexual intercourse. Such intention must be put into actual practice; there must be an actual living together. While it may be true that joint occupancy of the same room is not under all circumstances essential, still it is clear that where the man,and woman do not dwell in the same house, and the visitation for sexual intercourse is clandestine, and there is no other association together after the manner of husband and wife, the relation, however immoral and unlawful, does not constitute unlawful cohabitation. Anderson's Dictionary of Law; Words and Phrases, vol. 8, p. 7188; Cannon v. United States, 116 U. S. 55, 6 Sup. Ct. 278, 29 L. Ed. 561; Turney v. State, 60 Ark. 259, 29 S. W. 893.

[8] 2. Exception is also taken to an instruction by which the jury were advised in substance that when a person arranges to have a crime committed, and sets in motion agencies for its commission, and thereafter repents, but does not prevent the crime, he must be held responsible the same as if he had not repented. In the criticism of the instruction it is apparently assumed that the only act done by defendant looking to a violation of the law was the deposit at the ticket office at Butte of the money for a ticket to be furnished to the prosecutrix at Spokane. The reasoning is that inasmuch as it appears that the ticket was never delivered, and that therefore the act in no way contributed to the offense, the instruction was wholly inapplicable to the facts in evidence. But the purchase of the ticket was not the only agency set on foot by the defendant. It appears that he had been in almost daily correspondence with the prosecutrix, and that only a short time prior to her coming he had written, requesting her to come to him, and offering to send the money to cover her expenses. Here was an influence which might well lead to a commission of the offense. Apparently acting upon his offer, the prosecutrix telegraphed to send the money, in order that she might come. Thereupon he arranged for the ticket, and then, for some reason which is left to conjecture, he seemingly changed his mind as to the method to be pursued, and, instead of having the ticket furnished to her at Spokane, he arranged with Fried to see her, and he telegraphed to her to meet Fried at the depot, with no intimation in the telegram, however, that she was not to come to Butte. When Fried arrived at Spokane he told her, so she testified, that the defendant had telegraphed her a ticket, but upon inquiry, not being able to get a ticket in that way, Fried bought one himself, with the suggestion that the defendant would reimburse him.

Manifestly it was this aspect of the case which was before the court when the instruction was given, and it was for that reason that doubt was intimated whether, after writing to and persuading the prosecutrix to come, the defendant ever made known to her any change of purpose or desire upon his part.

[9] 3. Exception is also taken to the following instruction given upon the court's own motion, after the jury had been out for some time:

"This is an important case; this is a costly case, both to the government and to the defendants; I realize that this is a strain upon all; but the jury must remember that witnesses of the character which have been introduced by the government in this case are likely to disappear and could not be had in another trial, and the jury must therefore attempt to agree; they must attempt to agree upon honest convictions; the jurors have a power under the law to stand out for acquittal or conviction, but no juror should take an arbitrary stand to acquit or convict a man; he must listen to the arguments of the other jurors, and he must listen and come to an understanding, if he can, and be convinced by their argument; it is wrong to convict as well as to acquit a man upon an arbitrary stand taken by a juror; they must not consider the penalty in the case whatever."

It is not an uncommon practice, and it is entirely within the discretion of the court, to recall the jury for the purpose of giving additional instructions. Perhaps the language employed is as strong as should ever be used in impressing upon a jury their duty, if possible, to reach unanimity by a fair consideration of each other's arguments, but in its general purport and spirit the instruction is not out of harmony with the common practice, and is abundantly supported by the decided cases. Allis v. United States, 155 U. S. 117, 15 Sup. Ct. 36, 39 L. Ed. 91; Id. (C. C.) 73 Fed. 165; People v. Miles, 143 Cal. 636, 77 Pac. 666; Jordan v. State (Tex. Cr. App.) 30 S. W. 445; State v. Dudoussat, 47 La. Ann. 977, 17 South. 685; State v. Gorham, 67 Vt. 365, 31 Atl. 845; Johnson v. State, 60 Ark. 45, 28 S. W. 792.

4. The other assignments we do not deem it necessary to discuss in detail. It was not improper to modify the defendant's tenth request, touching the significance of the fact that the prosecutrix entered upon a life of prostitution soon after she came to Butte. So, too, the court very justly and fairly explained to the jury that the operation of the act was not limited to women of chaste character, and further that their verdict should not be controlled by the nature of the penalty.

In conclusion, while we find error in the court's definition of unlawful cohabitation, the point is involved only in the second count, and, conviction upon the other counts being sufficient to support the judgment, it will be affirmed.