# CRIMINAL CASES.

## Staunton.

## HARLESS COUNTS V. COMMONWEALTH.

September 20, 1923.

Absent, Kelly, P., and Burks, J.

1.  JURY—*Verdict—Unanimity.*—The meeting and concurrence of the several minds of all of the jurors is essential to a valid verdict.

2.  JURY—*Verdict—Majority View—Unanimity.*—The jury room is no place for pride of opinion and obstinacy. It is the duty of the jurors to discuss the evidence in a spirit of fairness and candor with each other, and with open minds to give careful consideration to the views of their fellows, and, if it can be done without a sacrifice of conscientious convictions, to agree upon a verdict. But this means that the views of a minority, as well as the views of the majority, of the jurors, should be given careful consideration by their fellows. The majority view should not prevail merely because it has a majority in support of it. It should not prevail unless each and all of the jurors are in fact convinced that such view is supported by the evidence which has been introduced before them and by the law.

3.  JURY—*Verdict—Majority—Unanimity.*—The verdict should have the assent of all of the jurors, because it is considered by them to be based on the law and the evidence; not merely because a majority of the jurors so consider it. This is the standard, and the sole standard, by which the parties affected have the right to have verdicts found.

4.  HOMICIDE—*Declarations of Deceased—Accusation by Deceased that He had Caught Accused Robbing His Store.*—On a trial for homicide on the question of whether an altercation which immediately preceded the killing was brought on by accused or deceased, declarations of deceased to the effect that he had in fact caught the accused robbing his store are inadmissible.

5. Homicide—*Declarations of Deceased—Animus of Deceased.*—On a trial for homicide where the defense was self-defense, testimony to the effect that the deceased, prior to the day of the shooting, made declarations charging the accused with having stolen shoes from his store, is admissible, because tending to show the animus of deceased, and whether deceased or accused brought on the difficulty which resulted in deceased's death.

6. Homicide—*Self-Defense—Both Parties at Fault—Instructions.*—On a trial for homicide the court instructed the jury that they were "to decide from the whole evidence who brought on the difficulty.    If you believe from the evidence beyond a reasonable doubt that both were in fault, and that both had ill-feeling towards each other, and that both were willing to fight, and that each advanced towards the other for the purpose of fighting with pistols, then neither can claim self-defense."

*Held:* That while the instruction was not to be regarded as a model one, yet, as applicable to the theory of the Commonwealth, based on certain evidence introduced, it was substantially correct.

7. Homicide—*Verdict—Unanimity of Jurors—Instructions.*—On a trial for homicide where the defense was self-defense, and the evidence was such as to leave room for honest difference of opinion on the part of the jurors, based on the consideration of the law and the evidence as to whether the altercation which preceded the homicide was brought on by the accused or by the deceased, the giving of the following verbal instruction, after the jurors had announced their failure to agree, was harmful error:    "Jurors in these cases ought to agree on a verdict, if they possibly can.    Of course, the law presumes there cannot be any kind of verdict unless it is unanimous, but the law don't mean that you cannot discuss the case; but after you meet and discuss, and find out what is just, according to law, and come to that conclusion, where there is one man for one thing and eleven have agreed on another thing, that man, before he would hang the jury, ought certainly to take into consideration the opinion of eleven against his, and come to it, unless he cannot do it without coming to the conclusion that he would be almost committing perjury himself, and do violence to his conscience and judgment.    And if there was three and nine; nine men, all trying to come at what is right and just, and three trying to come at what is right and just, nine are more apt to be right than three.    Now, gentlemen, go back and try to agree."

Error to a judgment of the Circuit Court of Wise county.

*Reversed and new trial granted.*

The accused, Harless Counts, was indicted for the murder of J. F. Davis. By the verdict of the jury the accused was found guilty of voluntary manslaughter, and his punishment was fixed at one year in the penitentiary. The judgment under review was entered in accordance with the verdict.

The deceased fired the first shot, the pistol ball striking and passing through the wrist of the accused, and still held the pistol pointed at the accused, pulling the trigger trying to make the pistol fire again, when the accused fired his pistol three times in rapid succession, killing the deceased. Some mechanism of the pistol of the deceased became "hung" after he fired the first shot, which prevented his firing again after his first shot. The shooting was preceded by words of altercation between the deceased and the accused while both were outside of the store of the deceased, and also a very short time thereafter when the deceased was inside the store and the accused was standing at the door of the store, at which place he was shot through the wrist, and from which he shot the deceased, as aforesaid; and there was evidence of ill feeling of long standing on the part of the deceased against the accused and of threats on the part of the former to kill the latter, which had been communicated to the accused prior to the shooting.

On the trial the case turned upon the question whether the altercation which occurred while the accused was at the store door was brought on by the accused or by the deceased, with the intention of provoking the shooting. That is to say, the case turned upon the question whether the accused had barred himself from relying on the plea that he shot in self-defense by reason of the fact that he had brought on the difficulty and hence was not without fault in the premises. The

evidence bearing upon this question was such that, re-
garding it in the light most favorable to the Common-
wealth, there was room for honest difference of opinion
among the jurors.

After the evidence had all been introduced, the jury
had been given a number of instructions, the case had
been fully argued and the jury had retired to consider
of their verdict, they after a time returned into court
and asked the court for certain instructions as to the
lowest punishment they were authorized to fix. There-
upon, the court instructed them orally with respect to
the punishment prescribed by law for murder in the
first degree, murder in the second degree, voluntary
manslaughter and assault and battery.    Thereupon the
jury returned to their room and after some time again
returned into court, stating that they could not agree
on a verdict.    Whereupon the court verbally instructed
them as follows:

"Gentlemen: Jurors in these cases ought to agree on
a verdict if they possibly can.    Of course, the law pre-
sumes there cannot be any kind of verdict unless it is
unanimous, but the law don't mean that you cannot
discuss the case; but after you meet and discuss and
find out what is just, according to law, and come to that
conclusion, where there is one man for one thing and
eleven have agreed on another thing, that man, before
he would hang the jury, ought certainly to take into
consideration the opinion of eleven against his and come
to it, unless he cannot do it without coming to the con-
clusion that he would be almost committing perjury
himself and do violence to his conscience and judgment.
And if there was three and nine; nine men, all trying to
come at what is right and just, and three trying to come
at what is right and just, nine are more apt to be right
than three.    Now, gentlemen, go back and try to agree."

*O. M. Vicars,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented by the assignments of error will, so far as necessary, be passed upon in their order as stated below.

The question upon which we feel constrained to reverse the case is as follows:

1. Did the court err in giving the verbal instruction to the jury set forth above concerning the standard by which they should be guided in endeavoring to agree on a verdict?

The question must be answered in the affirmative.

[1-3] It is elementary that the meeting and concurrence of the several minds of all of the jurors is essential to a valid verdict. It is true, as stated in the opinion of this court delivered by Judge Burks in the *Sims Case,* 134 Va. 736, 115 S. E. 382: "* * that the jury room is no place for pride of opinion and obstinacy, * * that it is the duty of jurors to discuss the evidence in a spirit of fairness and candor with each other and with open minds to give careful consideration to the views of their fellows, and if it can be done, without a sacrifice of conscientious convictions, agree upon a verdict." But this means that the views of a minority, as well as the views of the majority of the jurors, should be given careful consideration by their fellows. The majority view should not prevail merely because it has a majority in support of it, as the jury

were told, in substance, by the instruction in question. It should not prevail unless each and all of the jurors are in fact convinced that such view is supported by the evidence which has been introduced before them, and by the law. The verdict should have the assent of all of the jurors because it is considered by them to be based on the law and the evidence; not merely because a majority of the jurors so consider it. This is the standard, and the sole standard, by which the parties affected have the right to have verdicts found. Any other standard must necessarily result in chance verdicts which can but tend to bring jury trial into discredit.

As said in *Goodsell* v. *Seeley*, 46 Mich. 623, 10 N. W. 44, 41 Am. Rep. 183, "The law contemplates that they (the jury) shall, *by their decisions*, harmonize their views if possible, but not that they shall compromise, divide and yield for the mere purpose of an agreement. The sentiment or notion which permits this tends to bring jury trial into discredit and to convert it into a lottery. It was no doubt desirable to the public and to the parties that the jurors should agree if they could do so without sacrificing what any one of them believed were the just rights of the parties; but not otherwise."

As said in *Richardson* v. *Coleman*, 131 Ind. 210, 29 N. E. 909, 31 Am. St. Rep. 429: "The law * * expects every juror to exercise his individual judgment, and that when a verdict is agreed to it will be the verdict of each individual juror. In arriving at a verdict, a juror should not indulge in any undue pride of personal opinion, and he should not be unreasonable or obstinate, and he should give due consideration to the views and opinions of other jurors, and listen to their arguments with a willingness to be convinced, and to yield to their views if induced to believe they are cor-

rect; but the law does not expect, nor does it tolerate, the agreement by a juror upon a verdict unless he is convinced that it is right; in other words, unless it is his verdict—a verdict which his conscience approves, and he, under oath, after a full consideration, believes to be right."

2. The other questions raised by the assignments of error concern the action of the trial court in certain rulings in the admission of certain testimony; in giving certain instructions as asked for by the Commonwealth; and, in modifying instruction No. 1, asked for by the accused, by inserting the words "at the store door" after the word "altercation" in the tenth line of the instruction as offered as it appears in the printed record—which must be ruled upon so far as the same questions seem likely to arise on a new trial.

[4, 5] As none of these assignments present any novel question, we deem it sufficient to say that we find no error in the action of the court in the particulars mentioned in the preceding paragraph; except that we think that the insertion of the words "at the store door" aforesaid should have been made after the word "deceased," in the eighth line of the aforesaid instruction No. 1, instead of being inserted where it was, so as to make the meaning less unmistakable; and except that the ruling of the court excluding testimony as to declarations of the deceased to the effect that the deceased had in fact caught the accused robbing the store may not have been as clearly expressed as might have been. Hence, if instruction No. 1 is again offered on a new trial, it should have the modification mentioned inserted at the place which we think preferable, as above stated; and, if the question again arises, the court should not admit testimony as to declarations of the deceased to the effect that he had in fact caught the ac-

cused robbing the store.    However, if again offered on a new trial, testimony to the effect that the deceased prior to the day of the shooting made declarations charging the accused with having stolen shoes from the store will be admissible because tending to show the animus of the deceased, and who brought on the difficulty, as correctly ruled on the former trial.

[6]  We will add that we do not regard instruction No. 8, given at the request of the Commonwealth, as a model instruction; but, as applicable to the theory of the Commonwealth based on certain evidence introduced on the former trial, it was substantially correct.

[7] 3. As the evidence was such as that, to say the least of it in favor of the accused, it left room for honest difference of opinion on the part of the jurors based on the consideration of the law and the evidence, we think that the giving of the verbal instruction above mentioned was harmful error; and we therefore feel constrained to set aside the verdict, annul the judgment under review, and grant a new trial, which will be accordingly done.

*Reversed and new trial granted.*