[Crim. No. 1199. Third Appellate District.—September 6, 1932.]

THE PEOPLE, Respondent, v. S. ACHAL, etc., Appellant.

Ray Manwell and W. P. Rich for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PRESTON, P. J.—Defendant was charged with the crime of murder, and upon a trial, following his plea of not guilty, a jury returned a verdict finding the said defendant guilty of the crime of manslaughter. A motion for a new trial was denied and judgment rendered directing the imprisonment of the defendant for the term provided by law. Defendant appeals from the said judgment and from the order denying a new trial.

We find it unnecessary to detail the facts of the admitted homicide, though in discussing the grounds urged on the appeal, such features of the case as will serve to throw light upon the arguments made will be detailed.

The points urged for a reversal total four in number. First: Appellant contends that the trial judge forced a compromise verdict by an instruction given the jury. The case had been given to the jury at about 10 o'clock in the morning, and about 9 o'clock P. M. of the same day the jury requested the reading of certain testimony. After this testimony was read the jury again retired, and about 9:30 A. M. of the next day the jury again returned into court and reported little likelihood of an agreement. At this time the court below gave the instruction or suggestion complained

of. The trial judge said: "There has been an agreement reached by juries after having been out a longer period than you have been out. The facts of the case are all before you. It has been quite a protracted trial, and the essential features of it have been covered by many different witnesses. The evidence is here available for you if you desire to hear any of it re-read, and it appears to me you ought to be able to reach an agreement on due consideration. There is no desire on the part of the court to punish the jury nor influence you in any way in any prolonged session. It is extremely important that the case be determined. You haven't been out twenty-four hours yet, and this is a murder case, the highest type of case known to the law. It is both important to The People and the defendant that the trouble and expense and delay of a new trial be avoided, if it can be done fairly under the evidence, with justice to both sides." It is the concluding portion to which appellant most strenuously objects.

We find no merit in the point. Appellant cites *People* v. *Miles*, 143 Cal. 636 [77 Pac. 666, 669]. A careful reading of the opinion in the cited case supports the record as being free from error. We might quote, however, the words of Judge McFarland in affirming the judgment, as follows: "I desire to say further that while upon the record in this case it appears that appellants were not prejudiced by the guarded expressions of the court to the jury on the subject of their efforts to agree, still such expressions are hazardous, and it would be better for the court to say nothing upon the subject. There might be cases where such remarks would be construed by the jury as urging an agreement to convict."

As said in *Frandsen* v. *Chicago, R. I. & P. R. Co.*, 36 Iowa, 372, what the court said was abundantly true and practical, and ought to have occurred to the jury without the necessity of having it said to them by the court.

Quoting further from *People* v. *Miles, supra:* "The point is, that it was proper for the court to urge the importance of reaching a verdict, and as it intimated no opinion of its own or suggested how the verdict should go, the defendants were not prejudiced."

█ The second contention is as follows: The court erred in restricting a witness, M. S. Sigera, from testifying to very material and explanatory matters in behalf of the defend-

ant. The parties to the fatal affray, defendant and decedent, were of the Hindu race. The defense was that of self-defense, based on the claim that decedent was the aggressor, and that defendant himself, without fault, was compelled, in the necessary defense of his person, to slay his assailant. It developed that there exists several factions among the Hindus, and that there are amongst them certain individuals marked as spies for the British government, whose alleged sphere is to check up the propaganda circulated throughout this country in aid of interests or organizations opposed to the British rule in India. It seems that the decedent was accused of being one of these agents or spies, and had attempted to induce the defendant to aid him in some way in turning in or securing the deportation of a third Hindu. The defendant, refusing to become a party to the affair, alleged that he was threatened with bodily harm by the decedent, and that he, defendant, had told decedent that the matter would be brought to the attention of the central Hindu organization in Stockton, which organization was known as and called the "Sikh Temple". It was in the record that this organization was a religious and social organization. The defendant's testimony was to the effect that decedent was extremely fearful lest the whole affair be "aired out" before the organization, and that defendant's threat to do so was the cause or motive of decedent's attack. Defendant sought to show, by the witness referred to, the purpose of the organization of the "Sikh Temple", and the scope of its activities. The trial court sustained objections to this line of testimony. The reasons assigned by the trial court were as follows: "We can't go into the details of the quarrel or disagreement between defendant and the deceased. The material fact is that they did have some quarrel. We have the defendant's account of what the decedent said to him and the matters that led up to the final quarrels or culmination of the dispute." And in the same discussion the learned trial judge very aptly pointed out that if two men disagreed about the policies of the dominant political parties, it would be hardly material to try out the merits of the platform of the respective parties. We agree with the conclusions of the trial judge. The material fact of enmity or ill-will being shown, the reason for that feeling was im-

material, particularly in so far as it might affect the motives of the decedent.

If decedent was the aggressor, and had unlawfully attacked defendant, the latter's right of self-defense was in nowise strengthened by the fact that decedent's malice was ill-founded; and surely the right of self-defense would or could not have been abridged through the fact of decedent's ill-will having been well earned by defendant.

▇ The third ground of appeal is as follows: "The court erred in striking out certain testimony of one Hindu Singh, in reference to the occupation of the deceased among his countrymen prior to the date of the homicide." The testimony stricken out may be detailed. The witness had stated that he knew decedent for four or five years, and was then asked if he knew his occupation, to which latter question the witness answered in the affirmative. Then being asked the occupation of decedent, the witness replied: "Blackmail and stool-pigeon." This is the evidence that was stricken. We deem it useless to argue this out with appellant. Little or no authority is cited. It may suffice to say that there is no open season on blackmailers or stool-pigeons, and the terms are too general to mark traits of character, particularly those traits that are involved in a proceeding as the one before us. If the decedent had pursued his alleged occupation along lines contacting directly with defendant, there probably would have been no exclusion of evidence disclosing the specific acts complained of. Without further discussion, we can find no prejudicial error in the ruling.

▇ The last ground urged is stated as follows: "The court erred in depriving counsel for defendant, in cross-examining one Kishan Singh, a witness for The People, the right to determine the character of his testimony as hearsay, and as an interested witness." The witness was asked if he was a good friend of one Sur Singh, to which he replied that he was. He was then asked if Sur Singh told him what to say. To this latter question The People interposed an objection which was sustained. The point merits little discussion. Nothing is before us to show what interest, if any, Sur Singh might have in the case, and we are not even informed if such a person as Sur Singh had any real existence. No evidence was offered to show Sur Singh's connection with the witness. It would have done no harm to allow

the question, merely as a preliminary question, but if the facts as testified by the witness were true, it would make little difference who, if anyone, told him to so testify. The harm in approaching or coaching a witness lies in the intent to put forth false testimony. If the witness had approached one of his countrymen and detailed his observations, there would be no wrong in the latter advising the witness to go into court and testify.

In conclusion we may adapt the old saying that ''faint praise but damns'' to fit the instant case, with the change that ''faint criticism but commends''.

After a long, hard-fought trial, wherein defendant had the aid of two very able and experienced counsel, it surely reflects upon the fairness of the proceeding when the said counsel can find nothing prejudicial to the rights of their client other than the claims urged. The trial judge, upon the return of the verdict, expressed a mild surprise that the verdict did not carry the extreme penalty, and the record is convincing to the end that this surprise was not entirely feigned.

The order denying defendant a new trial is affirmed. The judgment is affirmed.

Thompson (R. L.), J., and Plummer, J., concurred.