## QUONG DUCK v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. November 12, 1923.)

No. 4015.

1. **Criminal law ⟨⟩864—Asking jurors how they are divided not proper practice, but not necessarily prejudicial error.**

The practice of asking a jury how it is divided numerically is not to be approved, but where such question is expressly limited to the proportion of division, and expressly excludes any question as to what the division is, as respects the guilt or innocence of defendant, it does not constitute reversible error.

2. **Criminal law ⟨⟩865(1)—Remarks of judge to jury, held reversible error.**

Statement by the judge to a jury in a felony case, which was unable to agree, that he could not understand why verdict was not promptly rendered, and that in his opinion the case was one where a verdict ought to be reached, and sending the jury back for further deliberation, *held* prejudicial and reversible error.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Criminal prosecution by the United States against Quong Duck. Judgment of conviction, and defendant brings error. Reversed and remanded.

John L. McNab, of San Francisco, Cal., R. G. Retallick, of Fresno, Cal., and Byron Coleman, of San Francisco, Cal., for plaintiff in error.

Joseph C. Burke, U. S. Atty., Mark L. Herron, Asst. U. S. Atty., and Russell Graham, Sp. Asst. U. S. Atty., all of Los Angeles, Cal.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. Quong Duck was indicted in the first count for concealing and selling opium prepared for smoking, and in the second count for facilitating the transportation, concealment, and sale of opium. He was acquitted under the first count and convicted under the second count, and was sentenced to five years' imprisonment and to pay a fine of $1,000. He brought writ of error.

After the evidence was concluded **and** argument was had, the jury returned to the courtroom, where the following proceedings occurred:

"The Court: Gentlemen of the jury, have you agreed upon a verdict?

"The Foreman: We have not, your honor.

"The Court: How does the jury stand? I want to know just how you are divided, not as to your vote whether guilty or not.

"The Foreman: The jury stands eight to four.

"The Court: I don't understand, gentlemen of the jury, why a verdict has not been promptly rendered in this case. You may retire to your chambers. I hope you will compose your differences. There ought to be a verdict reached in this case. Anything I can do to assist you, I will do it."

Whereupon the jury retired at 4:05 p. m. for further deliberation, and at 4:20 p. m. returned with the verdict of not guilty on the first count and guilty as charged in the second count of the indictment. Plaintiff in error insists that the interrogatories and remarks of the court constituted prejudicial error.

[1] It is hardly necessary to say that the practice of asking a jury how it is divided numerically is not to be approved, because that is a matter with which the court has no direct concern, and, as was declared in Burton v. United States, 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482, cases may easily be imagined where such a practice might lead to improper influences. But where such a question is expressly limited to the ascertainment of the proportion of division, and expressly excludes any question of what the proportionate division is, as to the guilt or innocence of the defendant, and the court, after hearing what the division is, directs further deliberation with an expression of hope that the jurors may compose their differences of views, we are not prepared to hold that such question constitutes prejudicial error.

[2] But there is more to the present inquiry, for an affirmance of the judgment herein would sustain a conviction in a felony case, where the judge told the jury, which was unable to agree, that he could not understand why verdict was not promptly rendered, and that in his opinion the case then under deliberation was one where verdict ought to be reached. Thus, upon the whole case, the court not only followed a practice condemned, but by its added expression of an opinion doubtless impressed the jurors with the belief that the court meant that it was their duty to bring in a verdict against the defendant. We are therefore constrained to believe that the statements of the court were prejudicial, and that the judgment should be set aside and a new trial ordered.

Reversed and remanded, with directions to grant a new trial.

ROSS, Circuit Judge (concurring). In the case of Burton v. United States, 196 U. S. 307, 25 Sup. Ct. 250, 49 L. Ed. 482, the Supreme Court said, among other things:

"A practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or *permits such a question on the part of the presiding judge.* [Italics mine.] Cases may easily be imagined where a practice of this kind might lead to improper influences, *and for this reason it ought not to obtain.* [Italics mine.]"

In the case of Peterson v. United States, 213 Fed. 920, 130 C. C. A. 398, this court, in holding erroneous the instruction there involved, where the trial court had by a question ascertained that the jury stood 7 to 5, said, among other things:

"Without cautioning the jurors against yielding their honest, conscientious convictions, whatever they may have been, to mere numbers or to considerations of economy, the presiding judge unqualifiedly told them that 'the case should be finally disposed of as to all' defendants. 'The government has a right,' it was said, 'to a verdict without further expenditure of time and money.' And the instruction was closed by the expression of a 'belief' that the jurors could 'honestly come to an agreement.' The court might very well have expressed the hope for such an agreement, but it is difficult to conceive what basis there was at that juncture for believing that the jury could honestly agree. It is to be borne in mind that nowhere did the court make it clear that, however desirable it might be to avoid another mistrial and finally to terminate the prosecution, an agreement should not be reached in violation of the honest conviction of any one of the jurors. It was not correct to say that the government had a right to a verdict without further expenditure of time and money; it had only a right to a fair consideration of the case. No obligation rested upon it to make any further expenditure, for, in case of a mistrial, it would have been the right, if not the duty, of the prosecuting officers to dismiss the prosecution. In any event, it was not its right to demand an agreement; nor did the defendant have such right. But one impression could have been left upon the minds of the jurors, and that such impression was made is borne out by the event. They retired, and in less than an hour returned with a verdict acquitting the one defendant and convicting the other, and this without any new light upon the law, or any further suggestion from the court as to the significance or character of any of the evidence in the case, and after the jury had deliberated the large part of a day, with the resultant conviction upon their part that they could not get together. Can there be any question that, retiring with the impression that the all-important thing was a final disposition of the case, the jurors consciously or unconsciously bartered the acquittal of one defendant for the conviction of the other?"

In the instant case, the jury, in answer to a question by the court, stated that it stood 8 to 4, to which the court responded:

"I don't understand, gentlemen of the jury, why a verdict has not been promptly returned in this case. You may retire to your chambers. I hope you will compose your differences. There ought to be a verdict reached in this case. Anything I can do to assist you, will do it."

Within 15 minutes thereafter the jury returned with their verdict of guilty. I find it impossible to resist the conviction that the verdict not only may have been, but very likely was the result of the improper influence made by the remarks of the presiding judge upon those of the jurors who before had been against conviction, and agree to the reversal of the judgment and the awarding of a new trial.