**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Warren MASON,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Casey WELSH,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mitchell SHIELDS, Defendant-Appellant.**

**Nos. 80–1131, 80–1145 and 80–1132.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Sept. 23, 1981.

Rehearing Denied Dec. 16, 1981.

---

Albert G. Freeman, Tucson, Ariz., for Welsh.

Robert J. Hooker, Tucson, Ariz., for Mason.

Victoria A. King, O'Meara, Michela & Weber, Tucson, Ariz., for Shields.

Rhonda L. Repp, Asst. U. S. Atty., Tucson, Ariz., argued, for plaintiff-appellee; Michael D. Hawkins, U. S. Atty., Tucson, Ariz., on brief.

Before BROWNING, Chief Judge, KEN-NEDY, Circuit Judge, and HOFFMAN,* District Judge.

KENNEDY, Circuit Judge:

The issue of principal significance in this case is whether the *Allen* charge given below was correct in its formulation.[1] We are required to reverse the convictions on this point. The case also presents certain evidentiary and substantive issues, and we defer a detailed recital of the facts until Part II of the opinion, which deals with those other matters.

Appellants Mason, Welsh, and Shields were convicted of conspiracy to distribute cocaine, 21 U.S.C. § 846 (1976), and of actual distribution of cocaine, 21 U.S.C. § 841(a)(1) (1976). Appellants Shields and Welsh were also convicted of using firearms during the commission of a felony, pursuant to 18 U.S.C. § 924(c)(1) (Supp. III 1979).

The appellants had been tried previously, together with a fourth defendant named Johns. The first jury found Johns guilty but could not reach a verdict as to the appellants. The appellants were tried again. The second jury began its deliberations at 3:30 p.m. on the second day of the trial and adjourned at 5:00 p.m. They reconvened at 9:00 a.m. the next morning. At 10:30 a.m., they advised the Marshal they were "having problems" deliberating. The trial judge summoned counsel to the courtroom and gave a modified form of the *Allen* charge. We set it out in full in Appendix A. Counsel were not informed of the judge's intention to deliver the *Allen* charge, and each defense counsel objected to it after it was given. After the charge was read, the jurors were sent to lunch. They resumed deliberations at 1:00 p.m. Guilty verdicts, on all counts, were returned an hour and a half later.

I

The *Allen* charge, while productive of continued comment and debate, is nevertheless an instruction that has been accepted for many years. It must be added, however, that neither the Supreme Court nor various circuits have settled upon a precise formulation for the charge. The court in *Allen* did not quote the instruction it approved; it merely paraphrased the charge, omitting some portions, embellishing others. *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157–58, 41 L.Ed. 528 (1896). The *Allen* Court did state that the charge it approved was taken "literally"[2] from *Commonwealth v. Tuey*, 62 Mass. (8 Cush.) 1 (1851).[3] Neither the Supreme Court nor the circuits which permit the charge insist on the *Tuey* formulation, nor do we.

A supplemental jury charge, such as the *Allen* charge, can be useful in cases of apparent juror deadlock. It serves to admonish jurors to keep trying. *United States v. Beattie*, 613 F.2d 762, 766 (9th

---

* Honorable Walter E. Hoffman, United States District Judge for the Eastern District of Virginia, sitting by designation.

1. The term "*Allen* charge" is the generic name for a class of supplemental jury instructions given when jurors are apparently deadlocked; the name derives from the first Supreme Court approval of such an instruction in *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157–58, 41 L.Ed. 528 (1896). In their mildest form, these instructions carry reminders of the importance of securing a verdict and ask jurors to reconsider potentially unreasonable positions. In their stronger forms, these charges have been referred to as "dynamite charges," because of their ability to "blast" a verdict out of a deadlocked jury. The charge has also been called the "third degree instruction," "the shotgun instruction," and "the nitroglycerin charge." *See* Marcus, *The* Allen

*Instruction in Criminal Cases: Is the Dynamite Charge About to be Permanently Defused?*, 43 Mo.L.Rev. 613, 615 (1978).

2. *Allen*, 164 U.S. at 501, 17 S.Ct. at 157.

3. Judge Hoar's charge in *Tuey* is set forth in Appendix B.

    The Court also approved, 162 U.S. at 501, 17 S.Ct. at 157 the charge given in *State v. Smith*, 49 Conn. 376 (1881). There, the Connecticut Supreme Court rejected the argument that jurors should be instructed to ignore the opinion of their fellow jurors. Important to this rejection however was the consideration that "the verdict to which each juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusions of his fellows . . . ." *Id.* at 386.

Cir.) (Browning, C. J., concurring), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980). It can help obdurate or recalcitrant or even puzzled jurors to adopt a reasoned conclusion. It nevertheless must be used with care and with caution. If the trial court, in its discretion, determines that the case may justify the charge, it is the better practice to include a version of it in the jury's original instructions. *See, e. g., United States v. Williams,* 624 F.2d 75, 76 (9th Cir. 1980); *United States v. Gugliemini,* 598 F.2d 1149, 1151 (9th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 300, 62 L.Ed.2d 310 (1979); III American Bar Ass'n, *Standards for Criminal Justice,* Standard 15–4.4 (2d ed. 1980).

■ Even if the *Allen* charge is not given initially, this Circuit permits its use as a supplemental charge.[4] *United States v. Beattie,* 613 F.2d 762, 764 (9th Cir.), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2962, 64 L.Ed.2d 838 (1980); *United States v. Seawell,* 583 F.2d 416 (9th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978). We have noted, however, that it "stands at the brink of impermissible coercion," *United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir. 1977), and that "even in the most acceptable form, [the *Allen* charge] approaches the ultimate permissible limits to which a court may go . . . ." *Sullivan v. United States,* 414 F.2d 714, 716 (9th Cir. 1969).

Given that *Allen* error calls into question the validity of a jury's verdict, upon which substantial appellate presumptions rely, we must give close scrutiny to the actual charge and the circumstances in which it was given. *See Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam); *United*

States v. Moore,* 653 F.2d 384, 390 (9th Cir. 1981); *United States v. Taylor,* 530 F.2d 49, 51 (5th Cir. 1976). One form of scrutiny is embodied in this circuit's rule that the charge will be upheld only if in a form not more coercive than that approved in *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). *Beattie,* 613 F.2d at 765; *United States v. Handy,* 454 F.2d 885, 889 (9th Cir.), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *Sullivan,* 414 F.2d at 718. Accordingly, we have held it reversible error to give the charge twice, *Seawell,* 550 F.2d at 1163,[5] and have reversed a conviction when the instruction failed adequately to remind jurors not to surrender their honest and conscientiously held beliefs to the majority's desire for a verdict. *Peterson v. United States,* 213 F. 920 (9th Cir. 1914). *See also Moore,* 653 F.2d at 390; *Beattie,* 613 F.2d at 765; *Sullivan,* 414 F.2d at 718; *Miracle v. United States,* 411 F.2d 544 (9th Cir. 1969); *Kawakita v. United States,* 190 F.2d 506, 527 (9th Cir. 1951), *aff'd,* 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952); Note, *Due Process, Judicial Economy and the Hung Jury: A Reexamination of the Allen Charge,* 53 Va. L. Rev. 123, 128–29 (1967). In addition, other factors may indicate the coerciveness of the charge, *e. g.,* the length of deliberations after the charge was given, the total time of jury deliberations in relation to the case's difficulty, as well as any evidence of undue pressure on the jury. *Beattie,* 613 F.2d at 765–66.

We turn now to the charge in the case before us. The trial court added comments to the *Tuey* formulation in various respects. First, it stressed the expense of the case in terms of time, effort, and money. We do not interpret this Circuit's rule that any

---

4. Appellants attack the general validity of the *Allen* charge. Although the *Allen* charge has been disapproved in at least three Circuits, *United States v. Silvern,* 484 F.2d 879, 883 (7th Cir. 1973) (en banc); *United States v. Thomas,* 449 F.2d 1177, 1187 (D.C.Cir.1971); *United States v. Fioravanti,* 412 F.2d 407, 420 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969), and some states, *see, e. g., People v. Gainer,* 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977), the mere giving of the

*Allen* charge in this Circuit is not reversible error. *United States v. Seawell,* 583 F.2d 416 (9th Cir.), *cert. denied,* 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 666 (1978).

5. We do not imply that, if an *Allen*-type charge is included in the original jury charge, a supplemental instruction would violate *Seawell.* *See* III American Bar Ass'n, *Standards for Criminal Justice,* Standard 15–4.4(b) (2d ed. 1980).

supplemental charge may not be more coercive than *Allen* as preventing *any* supplementation, and we do not think that the addition of the comments here necessarily made the charge more coercive. The added comments do, however, tip the charge in that direction.

This court has long recognized that injection of fiscal concerns into jury deliberations has potential for abuse. In *Peterson v. United States*, 213 F. 920 (9th Cir. 1914), this court criticized a charge which began with statements regarding the expense of the trial and then stated that "[t]he government has a right to a verdict without farther [*sic*] expenditure of time and money ... and if [the defendants] are innocent they have the right to be acquitted before their means are exhausted." *Id.* at 924. This instruction was held erroneous because it did not simultaneously stress the fact that "any agreement should not be reached in violation of the honest conviction of any one of the jurors." *Id.* at 925. *See also United States v. Rodgers*, 289 F.2d 433, 435 (4th Cir. 1961); *Shea v. United States*, 260 F. 807, 809–10 (9th Cir. 1919).

The other major supplementation to the charge was the comment that the Supreme Court had approved the instruction. It is really irrelevant for the jury to know that the Supreme Court has approved the instruction. That eminent tribunal no doubt had approved, directly or indirectly, most of the charges given in this case, but the mention of the Supreme Court only with reference to the *Allen* charge must have given it special weight in the minds of the jury. With respect to the invocation of the Supreme Court's name, the Second Circuit has affirmed a conviction in which that procedure was used, but only when accompanied by a contemporaneous caveat that the trial court was not attempting to coerce minority jurors. *United States v. Kenner*, 354 F.2d 780 (2d Cir. 1965), *cert. denied*, 389 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). The court was careful, however, to state that such a practice was "saved from reversal by the barest of margin, a margin provided ... by the judge's disclaimer of intention to 'coerce' and by his expression of willingness to accept 'the ultimate decision,' whatever it might be." *Id.* at 784. When this element is added to the calculus, the impact of the present charge is undoubtedly greater than *Allen*, and thus might be deemed more coercive.[6]

Our decision, however, need not turn on this point. Here, the judge, after deviating from the charge approved in *Allen*, made no attempt to counterbalance his excesses by further instructing the minority not to abandon their conscientiously held views merely to secure a verdict. *See Kenner*, 354 F.2d at 784. Instead, he relied solely on the language of *Allen*, where this reminder appears only as an introductory clause to a request to examine one's own views in light of others. Since the *Allen* charge already "stands at the brink of im-

---

**6.** The trial court also omitted a substantial part of the charge in *Tuey, viz.*, a reminder that the Government carries the burden of proving every element of the crime beyond a reasonable doubt. *Commonwealth v. Tuey*, 62 Mass. (8 Cush.) 1, 2 (1851). While at least one judge has noted that the omission of this part of a charge might raise problems, *Pugliano v. United States*, 348 F.2d 902, 903–04 (1st Cir.) (Aldrich, C. J.), *cert. denied*, 382 U.S. 939, 86 S.Ct. 390, 15 L.Ed.2d 349 (1965), in this Circuit such an omission is not reversible error so long as the judge also sufficiently reminds "each of the jurors of his obligation to give ultimate controlling weight to his own conscientiously held opinion." *Sullivan v. United States*, 414 F.2d 714, 718 (9th Cir. 1969). This reminder was not present here, as we explain in text.

The court also made several references to giving the case "one more try" and exhorted the jury as to the desirability of a unanimous verdict. *See* Appendix A, *infra*. The effect of these additions is difficult to measure; their potential vice is that jurors may feel disapprobation if they cause a mistrial by failing to yield to majority pressure. *See Walsh v. United States*, 371 F.2d 135, 139 (9th Cir.) (Browning, J., dissenting), *cert. denied*, 388 U.S. 915, 87 S.Ct. 2130, 18 L.Ed.2d 1357 (1967); *Quong Duck v. United States*, 293 F. 563, 564 (9th Cir. 1923). When, however, clear evidence of such undue pressure is present, reversal is mandatory. *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam) (Error for trial judge to state: "Now I am not going to accept this. You have got to reach a decision in this case.")

permissible coercion," *Seawell*, 550 F.2d at 1163, this was error.

If cases grappling with *Allen* have a common thread, it is this: the integrity of individual conscience in the jury deliberation process must not be compromised. In many cases, for example, potentially coercive additions to the *Allen* charge have been ameliorated by independent reminders of the juror's obligation to follow his own conscientiously held opinion. In *Sullivan v. United States*, 414 F.2d 714 (9th Cir. 1969), for example, we upheld the omission of certain portions of the *Tuey* charge because the instructions given "sufficiently reminded each of the jurors of his obligation to give ultimate controlling weight to his own conscientiously held opinion." *Id.* at 718. *See also Beattie*, 613 F.2d at 764; *Miracle*, 411 F.2d at 544; Note, *The* Allen *Charge: Recurring Problems and Recent Developments*, 47 N.Y.U.L.Rev. 296, 302 (1972). Indeed, the Fourth Circuit has said that if the *Allen* charge "were stripped of its complementary reminder that jurors were not to acquiesce in the views of the majority or to surrender their well-founded convictions conscientiously held, it might readily be construed by the minority of the jurors as coercive . . . ." *United States v. Rodgers*, 289 F.2d 433, 435 (4th Cir. 1961). *See also United States v. Scott*, 547 F.2d 334, 337 (6th Cir. 1977); *United States v. Smith*, 353 F.2d 166, 168 (4th Cir. 1965).

It is essential in almost all cases to remind jurors of their duty and obligation not to surrender conscientiously held beliefs simply to secure a verdict for either party. *Beattie*, 613 F.2d at 765; *Sullivan*, 414 F.2d at 718; *Shea*, 260 F. at 809–10, *Peterson*, 213 F. at 922. This was not done here, and particularly in view of the comments added to the *Tuey* instructions, we find that the charge was impermissibly coercive.[7]

## II

Since the case may be retried, we turn next to consideration of the points of substantive criminal law and to the evidentiary issues raised by appellants. *United States v. Seawell*, 550 F.2d 1159, 1164 (9th Cir. 1977). It is a preliminary necessity to recite the facts in more detail.

At approximately 7:45 p.m. one evening, appellants Welsh and Shields, along with one Swoveland, sold five ounces of cocaine to two Drug Enforcement Agency [DEA] agents. This sale was the first installment of a planned, larger sale of several pounds of cocaine. Swoveland was a key character; he had set up the deal and had only earlier that day suggested Mason and Shields come along with him for "protection." After the drugs were delivered, the DEA agents arrested all three participants while they were still in their car. An automatic pistol lay beside Shields' leg and a holstered Colt revolver was in the seat next to Welsh.

The DEA agents desired to apprehend Swoveland's source as well. To this end, they secured his cooperation. Approximately 45 minutes after his arrest, Swoveland took the two DEA agents to the house of one Roger Johns. After introductions, DEA agent Kelly, posing as a buyer, negotiated with Johns for delivery of the remainder of the cocaine. Johns said he would have to check with his source. He made a phone call, and reported to the prospective purchasers that the delivery would take place that night. The agents left after they made arrangements to be contacted by telephone upon the cocaine's arrival.

At 11:30 p.m. the agents became anxious. They returned to Johns' house to find him sitting on the rear of his car. He told the agents to wait another 30 to 45 minutes, as his source lived "clear on the other side of town." The agents left for a second time.

Unbeknownst to Johns, DEA agents had been watching his house since 8:30 p.m. The house was located in a semi-rural area of Tucson, Arizona, and was connected to the nearest main highway by two dirt roads. The night was still, and DEA agents later testified that any substantial move-

---

7. Appellants also contend that the charge as given materially misstated both the law and certain extraneous facts. We need not pass on these in light of our disposition.

ment in the area caused neighboring dogs to bark loudly.

At 12:30 a.m., the surveillance team saw a tan Mercedes Benz drive along one of the dirt roads to Johns' house. They later testified that it was the only car, other than the one used by agent Kelly and Swoveland, that stopped at Johns' house that night. After a 5 to 10 minute stay, the occupant, later identified as appellant Mason, drove away. He was followed and subsequently arrested at a convenience food store. Meanwhile, agent Kelly and the others received word that Johns now had the drugs. They went there.

When they arrived, Johns stated the drugs were hidden, went outside, and came back with a manilla envelope containing eight ounces of cocaine. He gave this to Swoveland who, in turn, gave it to Kelly. Kelly then took the drugs to the car, locked them in the trunk, and returned to the house with the $31,000 purchase price. Upon return, Kelly, in an effort to learn more about the deal, concocted a story about passing an outgoing car on the dirt road on his way in. He stated that he hoped he had not scared Johns' source. Johns replied that his source could not have been scared because he had left earlier.

The Government dropped the charges against Swoveland. Johns was convicted at the first trial. The appellants were charged and convicted at the second trial, as noted earlier, with distribution of, and conspiracy to distribute, cocaine. Additionally, appellants Shields and Welsh were charged with using firearms during the commission of a felony.

Each appellant raised several issues here; Mason claims Johns' statement was improperly admitted, while Shields and Welsh claim that they could not properly be charged with use of a firearm. We deal with these contentions briefly.

■ Mason contends that it was reversible error to admit evidence of Johns' utterance that his source had left earlier. Under Fed.R.Evid. 801(d)(2)(E), statements of a co-conspirator must meet four prerequisites

to be admissible against other co-conspirators. There must be: independent evidence of a conspiracy; independent evidence of defendant's connection to it; a showing that the statement was made in furtherance of the conspiracy; and a showing that the statement was made during the conspiracy. *United States v. Miranda-Uriarte,* 649 F.2d 1345, 1349 (9th Cir. 1981); *United States v. Perez,* 658 F.2d 654 at 658 (9th Cir. 1981).

■ Mason asserts that the statement fails to satisfy the last three criteria for the co-conspirator exclusion. We think not. In this Circuit, the prosecution need only show slight evidence connecting the defendant to the conspiracy, *United States v. Weaver,* 594 F.2d 1272, 1274 (9th Cir. 1979); *United States v. Fried,* 576 F.2d 787, 793–94 (9th Cir.), *cert. denied,* 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978), and this evidence may be circumstantial. *United States v. Weiner,* 578 F.2d 757, 770 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

■ The observations of the DEA surveillance team—that Mason was the only visitor after Johns' phone call—served to fulfill this requirement. They provided a reasonable basis for supposing that Mason played, at a minimum, the role of courier, and that is sufficient to independently connect him to the conspiracy for purposes of Fed.R.Evid. 801(d)(2)(E).

Mason also claims that the conspiracy was over by the time that Johns uttered his statement, and thus no statement could be made either in furtherance or during the pendency of the conspiracy. His argument rests on the premise that all co-conspirators except Johns had been arrested at the time Johns made his statement. We accept that factual premise for purposes of argument, but it does not aid Mason. Conspiracies do not necessarily end when all but one of the co-conspirators are arrested. The objectives of a conspiracy to destroy evidence, for example, may still succeed with only one member left unapprehended. Furthermore, "[a]n unarrested co-conspirator still

operating in furtherance of the conspiracy may say and do things which may be introduced against the arrested one if the conspiracy is still in operation." *United States v. Wentz*, 456 F.2d 634, 637 (9th Cir. 1972). *See also United States v. Marques*, 600 F.2d 747, 750 (9th Cir. 1979); *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977); *United States v. Payseur*, 501 F.2d 966, 973 (9th Cir. 1974).

Here, the original deal was for several pounds of cocaine. Thus, from Johns' perspective, the objectives of the conspiracy still remained to be met, and the statement can be seen as an attempt to facilitate the planned future deliveries. *See United States v. Fitts*, 635 F.2d 664, 667 (8th Cir. 1980); *Testa*, 548 F.2d at 852. Even if the conspiracy were limited to the sale of just the eight ounces, Johns, at the time he made the statement, had not received the payment which would have been the last act of the conspiracy, and the statement was designed to elicit the payment. *United States v. Smith*, 578 F.2d 1227, 1233 n.12 & 1237–38 (8th Cir. 1978); *Testa*, 548 F.2d at 852.

Mason's last argument is that Johns' statement was merely "idle chatter" and thus not in furtherance of the conspiracy. Statements of reassurance, however, are in furtherance of a conspiracy. *United States v. Sandoval-Villalvazo*, 620 F.2d 744, 747 (9th Cir. 1980); *Salazar v. United States*, 405 F.2d 74 (9th Cir. 1968). *See also United States v. Cambindo Valencia*, 609 F.2d 603, 632 (2d Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). Here, in response to a question directed at the continuing viability of Johns' source, Johns responded with a reassurance that his supply could not have been "scared off." The sensible interpretation of this utterance is that it was to calm and reassure Kelly, and as such it was in furtherance of the conspiracy. *See also United States v. Fielding*, 645 F.2d 719, 726–27 (9th Cir. 1981) (per curiam).[8]

■ Mason also challenges the sufficiency of the evidence presented by the Government. We think that the evidence introduced below, if viewed in a light most favorable to the Government, could permit a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Anderson*, 642 F.2d 281, 285 (9th Cir. 1981). Mason's activities were consistent with a role of a courier for the conspiracy. Consequently, we find no merit in Mason's argument.

■ We caution, however, that the rule discussed earlier regarding statements of co-conspirators under Fed.R.Evid. 801(d)(2)(E), i. e., that the prosecution need only introduce slight independent evidence of the defendant's connection to the conspiracy, does not mean that evidence that the defendant was a conspirator can be slight. This must be proved beyond a reasonable doubt to secure a conviction. *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). In the context of sufficiency of the evidence, the "slight connection" language means, rather, that the defendant need play only a slight part in the conspiracy in order to incur criminal responsibility for participation. *See United States v. Perez*, 658 F.2d 654 at 658 (9th Cir. 1981).

■ Finally, Shields complains that he could not, as a matter of law, be charged with "use" of a firearm during the commission of a felony in accordance with 18 U.S.C. § 924(c)(1) (Supp. III 1979). Because the gun nearest to Shields was holstered and because the guns were never brandished or displayed, Shields claims that he never "used" the gun within the meaning of

---

**8.** Should the appellants be retried, the court will also have to assess Johns' statement against the standards of the Confrontation Clause, U.S.Const., amend. VI. *See, e. g., Ohio v. Roberts*, 448 U.S. 56, 65 & n.7, 100 S.Ct. 2531, 2538 & n.7, 65 L.Ed.2d 597 (1980); *United States v. Perez*, 658 F.2d 654 at 659–662, (9th Cir. 1981); *United States v. Fielding*, 645 F.2d 719, 728 n.16 (9th Cir. 1981) (per curiam).

section 924(c)(1). The argument is without merit. In *United States v. Moore*, 580 F.2d 360 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978), the defendant was arrested for attempted bank robbery. A gun was found in his rear waistband. We upheld the conviction under section 924(c)(1) because the possession of the gun "was an integral part of the attempt. Moore 'used' his gun, much as he used the gloves and ski mask. These items increased the likelihood of success, without them he probably would not have sallied forth." *Id.* at 362.

Here, there was evidence that Shields and Welsh were brought along for protection and certainly the guns were an integral part of their function. The jury could have concluded that the presence of the guns facilitated the illegal transaction. Consequently, if on remand the prosecution succeeds in proving every element of the underlying felony against Shields, we see no impediment to submitting the additional charge of firearms use to the jury. *Moore*, 580 F.2d at 362. *See also United States v. Grant*, 545 F.2d 1309 (2d Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977).

REVERSED AND REMANDED.

Appendix A

The Court: Good morning. Ladies and gentlemen, the Marshal tells me that you have been unable to agree, and I thought we'd give it just one more try.

This has been, as I said before, an important case, important to each defendant and the Government. The trial has been expensive in three areas: In time, in effort and in money, to both the defense and the Government. If you fail to agree on a verdict, the case is left open and undecided. But like all cases, it must be disposed of sometime.

There appears to be no reason to believe that another trial would not be costly to both sides, nor does there appear to be any reason to believe that the case can be tried again by either side better or more exhaustively than has been tried to you. Any new jury must be selected in the same manner and from the same sources that you have been chosen. So there appears to be no reason to believe that the case would ever be submitted to twelve men and women who are more conscientious and more impartial or more competent than you are, and these are matters which I am sure remind all of us how desirable it is if you would unanimously agree on a verdict.

In one last effort to help you, I am going to read from a decision by the United States Supreme Court almost 85 years ago in an appeal involving a murder charge. In that case, the Supreme Court approves the following instructions that were given to the jury by a United States District Judge in Arkansas. This is what he said:

"In a large proportion of cases, absolute certainly cannot be expected; that although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of his fellows, yet each juror should examine the question submitted with candor and with a proper deference of the opinions of the other; that it was their duty to decide the case if they could conscientiously do so; that they should listen with a disposition to be convinced to each other's arguments, and that if much the larger number were for conviction, a dissenting juror should consider whether his duty was a reasonable one which made no impression on the minds of so many others equally honest, equally intelligent with himself or herself.

"If, on the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of the judgment which was not concurred in by the majority."

So I am going to leave those thoughts with you and have the Marshal take you to lunch now, and maybe after a gourmet lunch you might very well resolve your problems. Could you give the jurors a gourmet lunch please?

Appendix B

"The only mode, provided by our constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves, whether they may not reasonably, and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

*Commonwealth v. Tuey*, 62 Mass. (8 Cush.) 1, 2–3 (1851).