81 F.3d 171
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES, Plaintiff-Appellee,
v.
Ralph Vega and James Leonis, Defendants-Appellants.
 Nos. 94-10521, 94-10522.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1996.
Decided March 29, 1996.
 
 Before: REINHARDT, THOMPSON, O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants appeal their convictions arising from a reverse sting operation conducted by the government. For the reasons set forth below, we affirm the convictions as to both Vega and Leonis. However, with respect to the forfeiture we remand for a factual finding on the question of whether Leonis received proper notice from the government before his money was administratively forfeited.
 
 
 3
 I. Did the District Court err in admitting statements by Anthony Leonis against appellants under the coconspirator exception to the hearsay rule [FRE 801(d)(2)(E) ]?
 
 
 4
 Appellants are incorrect when they assert that the district court erred in finding that Anthony Leonis' statement could qualify as a statement "in furtherance" of the conspiracy when the statement was made. This finding is expressly supported by our decision in United States v. Taylor, 802 F.2d 1108, 1117 (9th Cir.1986) ("Statements made by an unarrested co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator."), cert. denied, 479 U.S. 1094 (1987).
 
 
 5
 We also find no clear error in the court's findings of fact--that from Anthony Leonis' perspective the conspiracy had not yet ended and that his statement was "in furtherance" of the conspiracy. Federal Rule of Evidence 801(d)(2)(E) states that a hearsay statement may be admitted against a defendant if it is "a statement by a coconspirator of [the defendant] during the course and in furtherance of the conspiracy."[1] The scope of statements considered to be in furtherance of a conspiracy is quite broad, and has been held to include reassurances to customers, United States v. Mason, 658 F.2d 1263 (9th Cir.1981), statements to keep coconspirators informed, and statements to induce further participation, United States v. Eaglin, 571 F.2d 1069 (9th Cir.1977), cert. denied, 435 U.S. 906 (1978). During the conversation, after Lopez asked Anthony Leonis if he had counted all the money, Leonis replied:
 
 
 6
 I was there until 2:00 a.m. in the morning, you know I counted the thing at 4 and 9 (sic) and I went over there with, with a, went to Ralph's place and looked at it, checked out these guys they're clean, checked out the money....
 
 
 7
 AER at 32. This statement could reasonably be construed as intended to allay the fears of someone whom Anthony Leonis seemed to believe was involved with his brother. Thus, the statement is admissible. See, e.g., United States v. Eubanks, 591 F.2d 513, 521 n. 7 (9th Cir.1979). Furthermore, at the conclusion of the conversation with the undercover officer, Anthony Leonis asked that his co-conspirators call him so that the supposed shortage of money could be resolved. Vega ER at 33-34. This statement could reasonably have been construed to evidence a desire to continue the conspiracy by making up the shortfall in cash so that the deal could be completed. It is similar to the statements that we have previously held were intended to induce further participation by coconspirators or to provide reassurance to customers. It, too, seeks to extend the duration of the conspiracy so that the objectives may be achieved. Accordingly, it was admissible.
 
 
 8
 II. Did the Government Engage in Prosecutorial Misconduct Which Affected the Decision by a Potential Defense Witness Not to Testify?
 
 
 9
 Appellants contend that Agent Lopez "threatened" Gary Di Bennedict, a potential witness for Vega who had not been indicted, and that this may have led to his decision not to testify. They contend that the district judge should have immunized Di Bennedict and that the matter should at least be remanded for an evidentiary hearing.
 
 
 10
 We agree with Judge Whyte that Lopez's statement to Di Bennedict was entirely inappropriate. See United States v. Patterson, 819 F.2d 1495, 1508 (9th Cir.1987). However, we find no error in his conclusion, based on the testimony that he had already heard and Di Bennedict's request to speak with counsel, that Di Bennedict would not have testified anyway. Id. Thus, the district court did not err by denying immunity to Di Bennedict.
 
 
 11
 III. Did the District Judge Give an Improper Jury Instruction on Entrapment?
 
 
 12
 There is no merit to appellant's contention that the district court improperly instructed the jury on entrapment. The entrapment instruction meets the standards set forth in Jacobson v. United States, 112 S.Ct. 1535 (1992), and United States v. Lorenzo, 43 F.3d 1303, 1307 (9th Cir.1995).
 
 
 13
 IV. Were the Jury Instructions on Attempt Improper?
 
 
 14
 Both defendants assert that the district court made two errors concerning the jury instructions on the attempt charges--1) that the court's instructions on attempt misdescribe the elements of the offense, and 2) that the court erred by failing to instruct the jury on the defense theory that they "abandoned their attempt." We find no merit to either argument.
 
 
 15
 The elements of attempt to possess cocaine with the intent to distribute that the government must prove are "1) culpable intent, and 2) conduct constituting a substantial step toward the commission of the crime." United States v. Harper, 33 F.3d 1143, 1147 (9th Cir.1994), cert. denied, 115 S.Ct. 917 (1995). Although the district court did not include certain language that the defendants requested, the instruction given clearly set forth both elements of the crime and therefore was not erroneous. Compare United States v. Taylor, 716 F.2d 701, 711-12 (9th Cir.1983) (reversing conviction where jury instruction on attempt did not include substantial step requirement).
 
 
 16
 Defendants also argue that abandonment is a valid defense to attempt, that there was sufficient evidence in the record to support giving an instruction on abandonment, and that the district court therefore erred by failing to instruct the jury on that theory of the defense. Because we conclude that there was no factual basis for an abandonment instruction, we need not decide whether abandonment is, or should be, a legal defense to attempt.
 
 
 17
 Defendants own testimony does not support an abandonment instruction. Leonis testified that he walked away from the group, went into McDonald's, and had no interest in whether any deal was actually completed. This is not evidence of a voluntary renunciation of criminal intent. It merely indicates that Leonis had completed his part of the enterprise--bringing a potential buyer and potential seller together. RT IX at 58. Such evidence does not provide a factual basis for an abandonment instruction. Nor did Vega explicitly testify that he went to his car because he was affirmatively renouncing his intent. Accordingly his testimony and the other evidence in the record does not provide a sufficient basis for an abandonment instruction.
 
 
 18
 V. Was There Sufficient Evidence To Convict Defendants on Attempt?
 
 
 19
 Defendants contend that there was insufficient evidence to support their convictions of attempt to possess cocaine with the intent to distribute and that the conspiracy charge, which was dismissed after the jury hung on that count, should also be dismissed on insufficiency grounds.
 
 
 20
 We are unconvinced by Leonis' argument that he had only agreed to bring the parties together to try to work out a deal, and that he had no interest or stake in the successful culmination of the transaction, as was demonstrated by his leaving the scene to buy food at McDonald's before any deal was completed. The jury was instructed on an aiding and abetting theory of liability under 18 U.S.C. § 2. Leonis' testimony established that he intended to introduce potential buyers of a large quantity of cocaine to the undercover agent, who Leonis believed was in the market to sell large quantities of cocaine. If, as he admitted, his role were merely to introduce the parties, the fact that he left to go to McDonald's provides no defense to liability under an aiding and abetting theory, because he had already completed his task. Jurors could also rationally determine from Sergeant Vasquez' testimony that Leonis would get all or part of the $5,000 kickback from the deal. From this testimony a rational juror could easily conclude beyond a reasonable doubt that Leonis was associated with the attempt to possess cocaine with the intent to distribute and that by his actions he intended that the scheme succeed. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
 
 
 21
 Vega contends that his actions constituted mere preparation, and that there is insufficient evidence that he took a substantial step necessary to the commission of the crime. The thrust of his argument is that he had not agreed to buy cocaine, he had merely agreed to look at it; if he was not satisfied with its look or feel he did not intend to make the deal. Nevertheless, on the basis of all the evidence, a rational jury could have found beyond a reasonable doubt that Vega attempted to possess cocaine with the intent to distribute. United States v. Scott, 767 F.2d 1308 (9th Cir.1985); United States v. DeRosa, 670 F.2d 899 (9th Cir.), cert. denied, 459 U.S. 993 (1982).
 
 
 22
 VI. Was There Sufficient Evidence on the Conspiracy Count To Convict the Defendants?
 
 
 23
 Although the conspiracy count against both men was dismissed after the jury hung, we consider the sufficiency of the evidence because where a judgment of dismissal is entered on the ground of insufficient evidence, the double jeopardy clause prevents the retrial of the defendant. See Burks v. United States, 437 U.S. 1 (1978); United States v. Bishop, 959 F.2d 820, 828-29 n. 11 (1992). In this case, the government has refused to say whether it would attempt to retry Vega and Leonis.
 
 
 24
 The essential elements to the offense of conspiracy are an agreement by two or more people to commit an illegal act. United States v. Shabani, 115 S.Ct. 382, 384 (1994). The jury could easily infer from the evidence that Vega had agreed with Leonis to work together to buy a large quantity of cocaine with the intent to distribute it. Leonis admitted on cross-examination that he called Vasquez on March 26 to tell him that his brother's friends were coming from Bakersfield the next day, that he had discussed with his brother a price of $14,000 to $16,000 per kilo and that his brother had said "they'd take one to five [kilos]." RT IX at 51. There was other testimony that Vega and Di Bennedict had driven five hours with $80,000 in the car to meet with Leonis. See United States v. Hegwood, 977 F.2d 492, 497 (9th Cir.1992), cert. denied sub nom., Wilson v. United States, 508 U.S. 913 (1993).
 
 
 25
 The defendants' reliance on United States v. Melchor-Lopez, 627 F.2d 886 (9th Cir.1980), is misplaced. In that case, the evidence clearly showed that while the defendant was interested in doing a heroin deal with the others, including a government informer, he never agreed to do one, due to various stumbling blocks in the negotiations. Here however, any barriers to an agreement between Vasquez and Vega were irrelevant because a jury could have found that there was an agreement between Vega and Leonis. Accordingly, there was sufficient evidence on which to convict both defendants of conspiracy and retrial is not barred on the ground of insufficient evidence.
 
 
 26
 VII. Did the District Court err in denying appellants' motion to dismiss on double jeopardy grounds?
 
 
 27
 Appellants argue that under this court's ruling in United States v. $405,089.23, 33 F.3d 1210 (9th Cir.1994), amended on denial of rehearing, 56 F.3d 41 (9th Cir.1995), cert. granted sub nom., United States v. Ursery, 116 S.Ct. 762 (1996), their convictions should be dismissed on double jeopardy grounds. Prior to their convictions, both had money that allegedly belonged to them forfeited in an administrative forfeiture hearing.
 
 
 28
 There is no merit to Vega's contention. See United States v. Cretacci, 62 F.3d 307 (9th Cir.1995) (holding that administrative forfeitures of unclaimed property does not implicate the double jeopardy clause); see also United States v. Washington, 69 F.3d 401 (9th Cir.1995). Appellant Leonis concedes that he did not file a claim to the $3,900 taken from his house after his arrest and did not contest its forfeiture. He argues, however, that Cretacci and Washington do not apply because, unlike the defendants in those cases, he did not receive notice of the impending forfeiture. This argument does raise a new issue not covered by the case law, and there is no evidence in the record to support or disprove his argument.[2] Accordingly, we remand to the district court to make a factual finding as to whether Leonis received proper notice of the forfeiture proceeding.
 
 
 29
 VIII. Did the District Court correctly base its sentence calculation under the United States Sentencing Guidelines (USSG) on a five kilogram base offense level?
 
 
 30
 Appellants contend that because the money at the scene was not sufficient to pay for five kilograms of cocaine, the district court erred by sentencing them for that amount. We disagree. Appellant was sentenced under USSG § 2D1.1. Application note 12 of Section 2D1.1 states, "In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level ..." This court held in United States v. Frazier, 985 F.2d 1001 (9th Cir.1993), that sentencing using the amount agreed upon was required by the USSG in "reverse sting" operations. The record amply supports the district court's finding that five kilograms was the negotiated amount.
 
 
 31
 IX. Are appellants entitled to a departure from the Sentencing Guidelines for sentencing entrapment?
 
 
 32
 This court has recognized sentencing entrapment as a legitimate grounds for departing from the guidelines when the record shows that the defendant did not have a predisposition to traffic in the amount ultimately agreed upon, Stauffer, 38 F.3d 1103 (9th Cir.1994), or that the defendant had neither the intent nor the resources to complete the transaction, United States v. Naranjo, 52 F.3d 245 (9th Cir.1995). Although these cases were decided after the defendants were sentenced, the district court made the factual findings that would have been necessary under the new case law. Specifically, the judge found that in regard to sentencing entrapment:
 
 
 33
 I just don't think under the facts here any of those [sentencing entrapment arguments] apply to justify a downward departure. Mr. Leonis did know what he was doing, was involved in introducing parties that were to engage in a five-kilogram transaction, a period of time which negotiations for the sale of drugs was taking place. I don't think there is any doubt that Mr. Leonis intended to commit the offense with which he was found guilty. RT, 10/13/94, 11-12
 
 
 34
 This finding was supported by evidence produced at trial. Leonis discussed five kilos and a price with Vasquez on March 26, Exhibit 12a at 4; RT IX at 51, and Vega told him that he had sufficient money on March 27. Thus, the district court's findings were specific and well-supported, and we find no error.
 
 
 35
 X. Did the District Court err in refusing to grant appellant Leonis a departure under the U.S.C. Title 18 § 3553(f) (the safety valve statute)?[3]
 
 
 36
 Appellant was convicted of attempting to possess five kilograms of cocaine with the intent to distribute. Under 21 U.S.C. § 841, he must receive a minimum sentence of 120 months (10 years) in prison. If he were to qualify for the safety valve, his sentence would be determined under the sentencing guidelines. The guidelines provide that for a five kilogram cocaine transaction and one criminal history point, the sentencing range is 121-151 months. As a result, the safety valve would provide no relief to appellant unless the court below either provided him with an adjustment, e.g. for acceptance of responsibility (U.S.S.G. § 3E1), or exercised its discretion to depart from the sentence. Appellant does not argue that the district court erred in calculating his base offense level, and its decision not to depart from the sentence is a discretionary decision not reviewable by this court. United States v. Collins, 898 F.2d 103 (9th Cir.1990). Thus, even if appellant were correct that he was entitled to be sentenced under the safety valve, there would be no change in his sentence.
 
 
 37
 XI. Does the Recent Supreme Court Decision in United States v. Bailey Affect Vega's Conviction for Using or Carrying a Firearm During and in Relation to a Drug Trafficking Crime?
 
 
 38
 Vega was convicted for using and carrying a firearm during a drug trafficking offense and received a sixty month sentence to run consecutively with his sentence for attempt. After his conviction and sentencing, the Supreme Court decided Bailey v. United States, 116 S.Ct. 501 (1995), holding that the word "use" required "active employment" of the firearm by the defendant. Id. at 4043. We do not find that Bailey requires that Vega's conviction be reversed.
 
 
 39
 Because Vega admitted to carrying a firearm in a holster on his ankle, the evidence clearly was sufficient for a reasonable jury to convict Vega for carrying a firearm. In addition, the jury could not have found Vega guilty without finding, based on his testimony and that of the officer who seized the gun at the scene, that he was carrying a gun on his person; therefore, the error in the instruction was harmless.
 
 Conclusion
 
 40
 For the reasons set forth above, Vega and Leonis's convictions and sentences are AFFIRMED. As to Leonis's forfeiture, the matter is remanded for the limited purpose of making the factual findings described in Section VIII of this memorandum disposition. The district court shall make these findings within 60 days of the date of remand and shall forward them to the Clerk of this Court.
 
 
 41
 AFFIRMED in part; REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellants do not dispute that the statement was made by a coconspirator, nor do they dispute his ignorance of his coconspirators' arrests
 
 
 [2]
 The government submitted some documents to Leonis' counsel indicating that notice was sent to both his home and the jail where he was being held pending trial. Those documents are not part of the record before us. Accordingly, we cannot determine whether they constitute adequate notice
 
 
 [3]
 Appellant Vega incorporates all of his co-appellant's arguments but is clearly ineligible for the safety valve because of his firearm conviction